# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| MIRJANA Z. J., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | ) |
| v. | )  Case No. 4:24-cv-00285-JSD |
| | ) |
| MICHELLE KING, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Michelle King, Acting Commissioner of Social Security[1] (the "Commissioner") denying the application of Plaintiff Marjana Z. J. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6). Because this Court finds the decision denying benefits was supported by substantial evidence, this Court affirms the Commissioner's denial of Plaintiff's application.

---

[1] Michelle King became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michelle King should be substituted, therefore, for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**FACTUAL BACKGROUND**

At her hearing, Plaintiff testified to the following:  She has not worked since 2016 (Tr. 52). She has lower back pain that shoot down her legs and cannot stand for more than ten minutes, walk for more than five minutes, or sit for more than 30 minutes. (Tr. 55-57). She has tried aquatic therapy, injections, and decompression surgery to treat her back pain. (Tr. 60-61). She cannot bend, kneel, crouch, or pick up something heavier than a bottle of soda. (Tr. 58). She cannot shower by herself because of the twisting motion required. (Tr. 49). She cannot wash dishes for more than five minutes because her legs start to shake, has trouble getting off the toilet, and struggles to put on pants and shoes (Tr. 49). She has home healthcare who comes every day to help her cook, do laundry and shower. (Tr. 49-50). She is afraid to go up and down the stairs by herself because she has almost fallen. (Tr. 50-51). She started developing headaches in 2018 or 2016, before she had her accident, and gets them every two or three days, lasting between several hours to two or three days with a recovery period. (Tr. 58-59).

Since 2016, Plaintiff has been receiving treatment for: back pain and has been treated with physical therapy and injections; her mental health and has been treated with counseling and various medications; and her headaches which had been treated with medication.

The record contains opinion evidence from Kulsoom Junaid, M.D. ("Dr. Junaid"), her treating physician, Kate Reis, N.P., her treating primary care nurse, Yasuo Ishida, M.D. ("Dr. Ishida"), a consultative examiner, and Michael O'Day, D.O. ("Dr. O'Day"), a state agency medical consultant.

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## PROCEDURAL BACKGROUND

On February 11, 2019, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since January 29, 2016, due to lumbar disc dystrophy, bulging discs, and degenerative disc disease. (Tr. 14, 204-11). Her application was initially denied. (Tr. 90-95). On October 17, 2019, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 96-7). After a hearing, the ALJ issued an unfavorable decision on April 27, 2023 (Tr. 11-32). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on May 15, 2023, but the Appeals Council declined to review the case on January 22, 2024. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy

3

exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether

the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 29, 2016, the alleged onset date; that Plaintiff had the severe impairment(s) of degenerative disc disease with neuropathy, degenerative joint disease of the bilateral hips, degenerative joint disease of the bilateral knees, migraines, obesity, major depressive disorder, and generalized anxiety disorder; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 16-17). The ALJ found that Plaintiff had the residual functioning capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except:

> [S]he can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; the claimant can occasionally stoop, kneel, crouch, and crawl; she can frequently handle and finger; the claimant cannot be exposed to unprotected heights or hazardous machinery; she can have only occasional exposure to extreme cold or vibrations; the claimant can work in no more than a Code 3 noise environment; she is able to learn, remember, and carry out simple tasks and make simple work related decisions; and the claimant can use reason and judgment to complete those tasks in a timely manner and at an appropriate pace while ignoring or avoiding distractions, have only gradual changes in job settings or duties, no work requiring a high production rate pace.

(Tr. 20). The ALJ further found that the claimant was unable to perform any past relevant work, but that jobs existed in significant numbers in the national economy that she could perform (Tr. 24-25).

## DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ's decision fails to properly evaluate medical opinion evidence; (2) the ALJ's decision fails to explain how headaches were accounted for in the RFC; and (3) the RFC is conclusory without reference to what or how the evidence supports the ALJ's conclusions and, as such, is not supported by substantial evidence.

### I.    The ALJ Properly Evaluated Medical Opinions.

Plaintiff's first argument is that the ALJ fails to properly evaluate the supportability and consistency of the medical opinions of (1) Michael O'Day, D.O., (2) Kate Rsie, N.P., and (3) Kulsoom Junaid, M.D. and Adeijana Sacic, N.P. As discussed below, the Court finds that the ALJ properly evaluated the persuasiveness of medical opinions and prior administrative medical findings ("PAMFs").

For social security claims filed after March 17, 2017, the ALJ must not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to evaluate the persuasiveness of a medical opinion or PAMF by considering:

> (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.

*Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *4 (E.D. Mo. Aug. 8, 2022) (citing 20 C.F.R. § 404.1520c(c)). Supportability and consistency are the "most important factors" and must be explained by the ALJ. *Hirner*, 2022 WL 3153720, at *4; *see also* 20 C.F.R. § 404.1520c(b)(2). However, the ALJ is not required to use the precise words "supportability" and "consistency" in their analysis. *See Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (holding that when the ALJ's decision that a physician was unpersuasive was supported by substantial evidence, semantics arguments did not justify reversal); *see also Atwood v. Kijakazi*, No. 4:20-CV-1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) (same).

**A.  Michael O'Day, DO – State Agency Medical Consultant**

On August 18, 2019, Dr. O'Day found that Plaintiff could perform a reduced range of light work. (Tr. 75-76). Dr. O'Day further opined that Plaintiff could stand or walk for four hours and sit for six hours in an eight-hour workday. (Tr 75). He also stated that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds. *Id.*  Dr. O'Day also determined that Plaintiff could occasionally climb ramps/stairs, balance, stoop kneel, crouch, and crawl but that she could never climb ladders, ropes, or scaffolds. (Tr. 76).

In reviewing his opinion, the ALJ found it partially persuasive. The ALJ stated that Dr. O'Day's findings were "corroborated by lengthy explanations with numerous references to and discussion of the medical record of evidence," but that his findings were not fully persuasive because he was not able to review medical evidence in the record that was produced after he issued his opinion, "particularly [Plaintiff's] knee and hip degenerative conditions, would cause further limitations in the claimant's abilities[.]" (Tr. 24).

Plaintiff argues that, while the ALJ used the words "consistency" and "supportability" in assessing Dr. O'Day's opinion, she failed to properly explain how she considered those factors. This Court disagrees.

**<u>Supportability and Consistency</u>**

Plaintiff contends that the ALJ failed to properly evaluate the supportability and consistency of Dr. O'Day's opinion. Specifically, Plaintiff argues that the ALJ failed to adequately address supportability because the only explanation provided by Dr. O'Day in his opinion was "limited as noted due to pain," and the ALJ fails to refer to any specific explanation from Dr. O'Day (ECF No. 18, at 7 (citing Tr. 641-2)). Plaintiff further asserts the ALJ failed to evaluate consistency because she did not discuss any particular evidence postdating Dr. O'Day's opinion. This Court disagrees finding that the ALJ properly evaluated both the consistency and supportability of Dr. O'Day's opinion.

First, this Court finds that the ALJ properly evaluated the supportability of the ALJ's opinion. Indeed, despite Plaintiff's argument that Dr O'Day's opinion only included the explanation "limited due to pain," the section of his report labeled "RFC – Additional Explanation" contains a list of medical evidence and Plaintiff's daily activities that support his conclusion. The ALJ referred to such explanations in her analysis – stating that Dr. O'Day's opinion was

"corroborated by lengthy explanations with numerous references to and discussion of the medical record of evidence[.]" (Tr. 24). While Plaintiff argues that this reference is inadequate and that the ALJ failed to explain which portions of Dr. O'Day's findings she found partially persuasive, courts have repeatedly held that the ALJ does not have to address each part of a medical opinion in his/her decision. *See Seger v. O'Malley*, No. 4:23 CV 460 RWS, 2024 WL 3638255, at *7 (E.D. Mo. Aug. 1, 2024) (holding than an ALJ does not have "to address each and every part of a medical opinion to show that the entire opinion was properly considered; nor does it require the ALJ to entirely adopt each and every part of an opinion simply because she finds it persuasive." (citing *McClure v. Saul*, Case No.1:20CV150 SNLJ, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021)); *Russell v. Kijakazi*, No. 4:21-CV-00271-LPR, 2022 WL 4378724, at *1 (E.D. Ark. Sept. 22, 2022) (holding that the ALJ "is not required to articulate how he considered each opined limitation individually."). Therefore, this Court concludes that the ALJ properly evaluated the supportability of Dr. O'Day opinion.

Second, the ALJ also properly evaluated the consistency of Dr. O'Day's opinion. The ALJ explicitly stated that medical evidence produced after Dr. O'Day issued his opinion, particularly relating to her knee and hip degenerative conditions, was inconsistent with his findings and indicated further limitations in Plaintiff's abilities than those provided in his opinion. (Tr. 24). Then, elsewhere in her decision, the ALJ discussed specific medical evidence demonstrating degenerative changes in Plaintiff's hips and knees, which do in fact support greater limitations than Dr. O'Day opined. (Tr. 20, 77, 599-600); *see also Trosper v. Saul*, No. 1:20 CV 51 DDN, 2021 WL 1857124, at *7 (E.D. Mo. May 10, 2021) ("When the decision is read in its entirety, instead of only the single paragraph . . . in isolation, it shows the ALJ properly considered the record evidence as whole when evaluating the supportability and consistency of the opinion."). As

9

such, this Court finds that the ALJ properly evaluated the consistency of Dr. O'Day's opinion with the rest of the record.

**<u>Evaluation of the Record</u>**

Plaintiff also argues that the ALJ erred in her reliance upon Dr. O'Day's findings because he did not examine Plaintiff personally, nor review the entirety of the record before issuing his opinion. (ECF No. 18, at 12). This Court disagrees.

As an initial matter, the ALJ is permitted to rely upon the findings of a non-examining doctor under current regulations. *See Bowers v. Kijakazi,* 40 F.4th 872, 875–76 (8th Cir. 2022) (holding that the ALJ's reliance on the non-examining physicians' findings was not an error because they were consistent with the evidence as a whole); *Seger*, 2024 WL 3638255, at *9; *Rudloff*, 2024 WL 1140930, at *5.

Furthermore, the ALJ is not required to discount Dr. O'Day's opinion because he did not review the entire record at the time he issued his opinion. "An ALJ can rely on the 'opinion of a state agency medical consultant who did not have access to all the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered.'" *O'Neal v. Kijakazi*, No. 1:23-CV-140 SRW, 2024 WL 3400031, at *9 (E.D. Mo. July 11, 2024) (quoting *Kuikka v. Berryhill*, 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018)). Here, Dr. O'Day did not analyze all the evidence in the record before issuing his opinion, however, his opinion was issued after Plaintiff's onset date. *See Seger*, 2024 WL 3638255, at *9 (holding that ALJ did not err in relying upon opinions given by non-examining consultants that were given almost a year prior to the hearing because the "opinions were issued after plaintiff's alleged onset date and [were] therefore relevant evidence that the ALJ was required to consider). Furthermore, when formulating the RFC, the ALJ clearly considered the entire record, including

information that post-dated Dr. O'Day's opinion, and adopted the portions of his findings that were consistent with and supported by evidence in the record. Therefore, this Court finds that the ALJ properly evaluated and relied upon Dr. O'Day's opinion when formulating the RFC.

### B.  Kate Reis, NP

Katie Reis, NP, a treating provider of Plaintiff, provided an opinion in March 2023. In her opinion, Ms. Reis stated that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, sit for 20-30 minutes at a time, walk zero city blocks without rest or severe pain, stand for less than 20 minutes at a time, and stand or walk for 2-3 hours in total over the course of an 8-hour workday. (Tr. 987). She also opined that Plaintiff would need to shift positions at will from sitting, standing or walking and would need to prop up her feet at least occasionally for symptom relief. *Id.* The ALJ found Ms. Reis's opinion to be unpersuasive, noting that it lacked supportability because "the record reflects full strength and no lower leg edema" and was inconsistent with the record because it contained "no recommendation for elevating her legs." (Tr. 24).

Plaintiff argues that the ALJ erred by considering other treatment records when evaluating the supportability of Ms. Reis's opinion, and mistakenly analyzed Ms. Reis's treatment records when discussing consistency. This Court finds no evidence that such a mistake occurred. When addressing supportability, the ALJ referenced the lack of edema in Plaintiff's legs, which corresponds to the records of Ms. Reis' examinations. (Tr. 408, 411, 414, 968, 971, 974). The ALJ therefore properly evaluated the supportability of her opinion. *See Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (upholding the ALJ's conclusion that an opinion was only partially persuasive, in part, because it was unsupported by the doctor's own "routinely normal" examinations of the claimant); *Diana G. v. Kijakazi*, No. 4:22 CV 1245 JMB, 2024 WL 50805, at *6 (E.D. Mo. Jan. 4, 2024) (holding that, in evaluating supportability, an ALJ may properly

consider that the physician's own treatment notes do not support the opinion). Furthermore, the ALJ also properly addressed consistency, stating there were no other recommendations for Plaintiff to elevate her legs contained in the record. (Tr. 24). Treatment notes and examination notes from other providers do not demonstrate that Plaintiff was ordered to elevate her legs. In fact, treatment notes recommended that she exercise and continue walking (Tr. 616, 900). As such, this Court finds that she also properly evaluated consistency.

However, even if Plaintiff is correct, and the ALJ did effectively "flip-flop" the sources she cited to address supportability and consistency, it would effectively boil down to a mistake of terminology rather than of actual analysis. Because she properly evaluated both supportability and consistency, whether the ALJ used the right word is an argument over semantics and immaterial because, as discussed above, the ALJ addressed both supportability and consistency in substance and supported her conclusion with substantial evidence. *See Kamann*, 721 F.3d at 951; s*ee also Atwood*, 2022 WL 407119, at *5.

### C.  Kulsoom Junaid, MD and Adeijana Sacic, NP

On March 6, 2023, Adeijana Sacic, Plaintiff's treating nurse practitioner, executed a "Medical Source Statement – Mental." In her Statement, Ms. Sacic opined that Plaintiff was moderately limited in her ability to work a full day without needing more than the allotted number or length of rest periods but did not conclude Plaintiff had any other limitations. (Tr. 990-93). Dr. Junaid co-signed Ms. Sacic's opinion as her supervisor. (Tr. 993). The ALJ found Ms. Sacic's opinion to be partially persuasive. (Tr. 24). Specifically, the ALJ stated that that Ms. Sacic's conclusion that Plaintiff did not have disabling mental health impairments was supported by her treatment of Plaintiff and generally consistent with the evidence. (Tr. 24) Plaintiff argues that the ALJ's discussion of Ms. Sacic's opinion was insufficiently specific and failed to discuss the one

moderate limitation listed in her opinion. [ECF No. 18, at 7]. This Court disagrees with both of Plaintiff's arguments.

First, the ALJ is not required to discuss every limitation contained in a medical opinion. *See Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (stating that "the ALJ is free to accept some, but not all, of a medical opinion"); *Seger*, 2024 WL 3638255, at *7 (holding that the ALJ is not required "to entirely adopt each and every part of an opinion simply because she finds it persuasive"); *Rudloff v. O'Malley*, No. 4:23 CV 416 CDP, 2024 WL 1140930, at *10 (E.D. Mo. Mar. 15, 2024) (same). As such, the ALJ did not err in failing to mention the one moderate limitation listed in Ms. Sacic's opinion.

Second, the ALJ sufficiently addressed both the supportability and consistency of Ms. Sacic's opinion. As stated above, the ALJ said that the opinion was supported by her treatment of the Plaintiff and consistent with the evidence in the record. The ALJ also cited evidence in other sections in her RFC determination that supports her analysis of Ms. Sacic's opinion. *See Trosper*, 2021 WL 1857124, at *7. For example, the ALJ cited Ms. Sacic's treatment notes when noting that Plaintiff's "mental status examination are within normal limits." (Tr. 23, citing 18F/3 and 7). The ALJ also cited the treatment records of other providers who opined on Plaintiff's mental state, demonstrating similar normal mental status examinations to those cited by Ms. Sacic. (Tr. 23 (citing Tr. 9F/13, 29), 458, 474, 460, 470-71, 481). Therefore, this Court finds that the ALJ properly considered the supportability and consistency Ms. Sacic's opinion, and as such, properly evaluated PAMFs and medical opinions when formulating the RFC.

**II.    The RFC is Supported by Substantial Evidence.**

Finally, Plaintiff asserts that the RFC is not supported by substantial evidence because the ALJ "failed to conduct a proper pain/credibility evaluation, failed to provide accommodations for

13

plaintiff's severe headaches, and formulated the RFC based upon her own interpretation of the evidence provided after the initial denial and how it would affect the plaintiff's ability to function in the workplace[.]" (ECF No. 18 at 13).

### A. Headaches

Plaintiff argues that, while her severe migraines significantly limited her ability to perform work activities, it is not clear how they are accounted for in the RFC. (ECF No. 18, at 7-8). This Court disagrees.

The ALJ properly evaluated Plaintiff's headaches when formulating the RFC. In response to Plaintiff's headaches, the ALJ limited Plaintiff to sedentary work that involved "simple tasks and . . . simple work related decisions" and environments that have "no more than a Code 3 noise environment." (Tr. 20). Courts have repeatedly held that such limitations account for migraine headaches. *See Payne v. Kijakazi*, No. 2:20-CV-04195-WJE, 2021 WL 4635800, at *3 (W.D. Mo. Oct. 7, 2021) (finding that a noise limitation in the RFC properly accounts for a plaintiff's migraines); *Heather C. v. Kijakazi*, No. 23-CV-484 (ECT/DJF), 2023 WL 8282059, at *3 (D. Minn. Nov. 30, 2023) ("The ALJ accounted for Plaintiff's headaches in the RFC by limiting Plaintiff to light work and imposing restrictions on her ability to concentrate and maintain attention.").

Plaintiff also asserts that the ALJ should have explained why the RFC did not include a "light restriction, extra break, or any accommodation for when plaintiff is suffering with a migraine headache during work." [ECF No. 18 at 8]. However, when assessing the RFC, the ALJ is not required to "mechanically list and reject every possible limitation" that Plaintiff's migraines might elicit. *Nash v. Comm'r, Soc. Sec. Admin.,* 907 F.3d 1086, 1090–91 (8th Cir. 2018) (quoting *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)).

This Court also agrees with the ALJ's argument that the evidence in the record does not support additional limitations. (ECF No. 21, at 12). While Plaintiff has complained of photophobia (Tr. 619, 626), the ALJ does not have to accept Plaintiff's subjective complaints. *See Pierce v. Kijakazi*, 22 F.4th 769, 772 (8th Cir. 2022) ("Of course, an ALJ need not accept as true a claimant's testimony about the extent of his limitations."). Indeed, Plaintiff denied sensitivity to light on other occasions, and the ALJ is free to exclude conflicting evidence from her RFC determination. (Tr. 499, 632); *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) ("While some evidence in the record could lend support to a more restrictive RFC finding, we cannot say that the ALJ's decision 'lies outside the available zone of choice.'" (quoting *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006))). Plaintiff may not agree with this outcome, but this Court cannot overturn the ALJ's decision simply because Plaintiff believes the ALJ should have reached a different conclusion. *See Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *see also Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000). Thus, this Court holds that the ALJ properly considered and accounted for Plaintiff's migraines in her RFC decision.

## B.  Mental Health

Plaintiff argues that the ALJ's decision "lack[s] . . . any explanation of how the evidence that is in the record demonstrates an ability to perform work at the RFC formulated by the ALJ," specifically alleging that the ALJ failed to discuss or explain some of Plaintiff's mental health symptoms. (ECF No. 18 at 10). Plaintiff also asserts that the ALJ erred by relying upon a lack of objective evidence to discount Plaintiff's mental health symptoms, instead improperly making her own inferences from the medical record. This Court disagrees.

This Court finds that the ALJ relied upon objective medical evidence in making her RFC determination about Plaintiff's mental impairments. The ALJ's analysis discussed provider's

mental status examinations of Plaintiff, which were generally in normal limits. The ALJ further summarized that, while Plaintiff's treatment records indicated "some difficulties with focus and concentration needed to accomplish simple tasks" they "did not reflect a significant loss of abstraction or intellectual ability, or an inability to learn new information, remember information that was known sometime in the past, interact with verbal and nonverbal communication, control her movements, [and] control her behavior [.]" (Tr. 23-24). Furthermore, as discussed above, the ALJ also partially relied upon the opinion of Ms. Sacic and Dr. Junaid (Tr. 24), in which they opined that Plaintiff had no limitations in understanding, remembering, or applying information; no limitations in interacting with others, including supervisors, co-workers, and the public; and no limitations in regulating emotions and distinguishing between acceptable and unacceptable performance. (Tr. 990-93). Ms. Sacic's report also states that Plaintiff would not miss any work based upon her psychologically-based symptoms. (Tr. 992). Contrary to Plaintiff's arguments that the ALJ did not rely upon medical evidence to support her conclusions about Plaintiff's mental health, this Court finds that the above evidence supported the ALJ's RFC finding.

Plaintiff also claims that the ALJ did not explain how she accounted for Plaintiff's "tightness in her chest daily, panic attacks, word finding problems, depression, anxious mood and affect, rapid speech, poor attention span and concentration, crying spells, restlessness, bad dreams, and poor sleep." (ECF No. 18 at 10 (citing 458, 460, 924, 921, 918, 916, 914)). This Court finds that the ALJ was not required to provide more explanation because these are subjective complaints made by Plaintiff to her providers. Nor did the ALJ improperly make her own inferences from the medical records to discount them. As discussed above, the ALJ relied on objective medical evidence, including Ms. Sacic's opinion. The ALJ is not required to support an RFC with a particular medical opinion. *See* 42 U.S.C. §§ 401 *et seq.*; 20 C.F.R. §§ 404.1545, 416.945; *see also*

*Schmitt v. Kijakazi*, 27 F.4th 1353, 1359 (8th Cir. 2022) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion.") (internal quotations omitted); *Twyford*, 929 F.3d at 518. As with Plaintiff's headaches, this Court cannot overturn the ALJ's decision simply because Plaintiff believes she should have received a different one. *See Bradley*, 528 F.3d at 1115; *see also Young,* 221 F.3d at 1068. Therefore, this Court finds that the ALJ properly evaluated Plaintiff's subjective mental health in formulating her RFC.

### C.  Subjective Complaints

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Finally, Plaintiff argues that the ALJ did not adequately explain her reasons for discrediting Plaintiff's testimony and failed to "discuss the *Polaski* factors other than to minimally summarize them when determining plaintiff suffered with no limitations in any area except for concentration, persistence, and maintaining pace. . . [and that the ALJ] mentions some activities of daily living but fails to discuss other responses including when she indicated she does not handle stress or changes in routine well." (ECF No. 18 at 11). This Court disagrees.

"In analyzing a claimant's subjective complaints of pain, an ALJ must examine several factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) the dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004) "The ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole . . . but he must give reasons for discrediting the claimant." *Strongson*, 361

F.3d at 1072 (internal citations and quotations omitted). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

This Court finds that the ALJ properly explained why she discounted Plaintiff's subjective complaints. (*See* Tr. 20–35). As an initial matter, the ALJ provided ample objective medical evidence to justify discrediting Plaintiff's subjective complaints. For example, while Plaintiff claims that she had difficulty concentrating, completing tasks, and remembering things, the ALJ observed that Plaintiff's mental-status examinations were within normal limits, showed fair concentration, good insight/judgment, organized and goal-directed thoughts, and intact memory (Tr. 20-21, 23, 253, 398, 458, 460, 470–71, 474, 481, 914, 916–20). *See Constable v. Colvin,* No. 4:14 CV 1128 CDP, 2015 WL 5734977, at *18 (E.D. Mo. Sept. 29, 2015) (holding that where a claimant's mental-status examinations demonstrated no significant results, the ALJ properly discounted their subjective complaints of disabling mental limitations). Plaintiff also claimed physical limitations – disabling back pain, as well as difficulty standing, sitting, walking, lifting, squatting, bending, reaching, and kneeling. (Tr. 20, 253). The ALJ discounted these subjective complaints by noting that the objective evidence demonstrated that Plaintiff had full strength in her extremities, without any edema (Tr. 24, 317, 320, 332, 408, 411, 414, 450, 464, 467, 899, 906, 968, 971, 974); Plaintiff sometimes had a normal gait (Tr. 21, 315, 317, 330, 332–33, 353, 357, 361, 369, 373, 388, 450, 464, 467, 582, 899, 906); Plaintiff had normal range of motion in her back or musculoskeletal system (Tr. 22, 629, 633, 759, 787, 813); and Plaintiff's upper and lower extremities had full range of motion without pain (Tr. 409, 412, 414–15, 969, 972, 975). *See Gonzales,* 465 F.3d at 895 (holding that an ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary").

Furthermore, the ALJ properly considered both Plaintiff's course of treatment and daily activities. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v), 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(iv)–(v), 416.929(c)(3)(i). The ALJ noted that Plaintiff had never been hospitalized for her mental health conditions or required emergency treatment (Tr. 19), and that her symptoms improved with medication (Tr. 23, 458, 920). In addressing her physical symptoms, the ALJ noted that she received minimal treatment for her back pain and intermittent treatment for her knees and hips after June 2018. (Tr. 21-22). The ALJ also addressed Plaintiff's headache treatment, stating that she received constant treatment, which consisted only of medication, and helped relieve her pain. (Tr. 22, 619, 626). Regarding her daily activities, the ALJ noted that Plaintiff handled her own personal care without issue, prepared her own meals, went outside daily, shopped in stores, spent time with others, drove unassisted, handled her own finances, walked as much as possible, and had lifted something heavy. (Tr. 18–19, 22, 249–52, 615, 754). Therefore, this Court concludes that the ALJ properly evaluated Plaintiff's subjective complaints and, as such, her RFC determination is supported by substantial evidence.

## VI.    CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk shall reflect on the docket that Michelle King, Acting Commissioner of Social Security, is the proper defendant pursuant to Fed. R. Civ. P. 25(d).

**JOSEPH S. DUEKER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this 29th day of January, 2025.